UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHOENIX REO, LLC,

    Plaintiff,

v.

SHASHTRIJI, INC.; GHANSHYAM K. PATEL;
PRADYUMAN SHAH; PRAMOD PATEL;
SUNITA PATEL; HIRALKUMAR PATEL AND
PRIYANKA PATEL,

    Defendants.

No. 15 C 10697

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Plaintiff Phoenix REO brings this action to recover on a loan made to Shashtriji Inc. and guaranteed by individual defendants Ghanshyam Patel, Pradyuman Shah, Pramod Patel, Sunita Patel, Hiralkumar Patel, and Priyanka Patel. Phoenix REO filed a motion for summary judgment against the individual defendants for breach of their guaranties. For the following reasons, Phoenix REO's motion is granted.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of

1

evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Background**

This suit arises from guaranties executed by the individual defendants to secure a commercial loan for a hotel. The facts are largely undisputed. In March 1998, Shashtriji Inc. issued a promissory note to The National Republic Bank of Chicago (NRBC) for $1,200,000. R. 129 ¶ 11.[1] The note was secured by a mortgage on the hotel property and a loan agreement. *Id.* ¶ 14; R. 124 ¶¶ 7-8. The note and loan were modified and ratified several times between 1998 and 2012. R. 129 ¶¶ 12-13. In connection with the note, the individual defendants each entered into guaranty agreements with NRBC for the debt owed by Shashtriji. *Id.* ¶¶ 15-18.

Shashtriji is in default under the promissory note for, among other reasons, failing to make timely and complete mortgage payments, failing to pay property taxes, further encumbering the property, and failing to send regular financial statements. *Id.* ¶ 19. As of February 5, 2019, the principal due and owed under the promissory note was $751,104.17, with accrued interest of $35,171.72, real estate

---

[1] NRBC initially filed this lawsuit. The FDIC was substituted for NRBC when it took over the institution. The FDIC then sold the loan and guaranties to a third party, which was substituted for the FDIC as plaintiff. Phoenix REO is the successor-in-interest to that third-party purchaser.

2

taxes of $43,021.95, receiver property expenses of $66,000, default interest of $114,927.18, appraisal and environmental fees of $7,200, and late fees of $6,747.55. *Id.* ¶ 20. Interest continues to accrue at a rate of $271.22 per day. *Id.* Further, Phoenix REO has paid or become obligated to pay attorneys' fees and costs of $204,351.37. *Id.* ¶ 23.

Despite demands from Phoenix REO, the defendants have failed to make the payments specified in the promissory note and guaranties. *Id.* ¶ 21. Phoenix REO now moves for summary judgment on Count II of its complaint for the individual defendants' breach of their guaranties.[2] The defendants raised six affirmative defenses that they contend excuse their non-performance including: (1) fraudulent inducement; (2) impairment of collateral against NRBC; (3) impairment of collateral against Phoenix; (4) breach of contract against NRBC; (5) breach of contract against Phoenix; and (6) release and discharge of guarantors.[3]

**Analysis**

---

[2] Shashtriji is also a named defendant but has filed for bankruptcy and Phoenix REO's claim to recover against it under the loan agreement is not at issue here.

[3] Defendants H. Patel, Priyanka Patel, Pramod Patel, and Sunita Patel filed their answer and affirmative defenses on September 21, 2016. R. 68. Defendants G. Patel and Shah filed their answer and affirmative defenses on November 10, 2016. R. 86. Their affirmative defenses are the same. On March 28, 2018, the Court denied the defendants' collective motion to file a second amended answer. R. 114. In that order, the Court instructed the defendants that if they wished to amend their affirmative defenses, they needed to file a motion for leave explaining why they were not raised earlier, and that their motion would be denied absent good cause. On April 11, 2018, the defendants filed a third amended answer asserting additional affirmative defenses without leave of court. R. 115. Having ignored this Court's order, this Court declines to consider the additional affirmative defenses raised in the third amended answer.

3

The elements of a breach of contract claim are "(1) the existence of a valid and enforceable contract; (2) substantial performance by plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015).

The defendants do not dispute in their response to Phoenix REO's motion or in the declaration of Ghanshyam Patel that they executed valid guaranties, that Shishtriji defaulted on the promissory note, that they have failed to make payments as required by the guaranties, or that Phoenix REO has suffered damages. *See* R. 129 ¶¶ 15-21; Ex. 6. It is thus clear defendants breached their contracts as a matter of law.

However, defendants contend they are discharged from paying the debt because of the additional facts alleged in their six affirmative defenses. *See Myers v. Harold*, 279 F. Supp. 3d 778, 798 (N.D. Ill. 2017) ("[T]he basic concept of an affirmative defense is an admission of the facts alleged in the complaint, coupled with the assertion of some other reason defendant is not liable.") (alteration in original) (quoting *Instituto Nacional De Comercializacion Agricola (Indeca) v. Cont'l Illinois Nat. Bank & Trust Co.*, 576 F. Supp. 985, 988 (N.D. Ill. 1983)). To survive summary judgment, the defendants bear the burden of putting forth evidence to create a genuine issue of material fact on their affirmative defenses. *Bethine W. Alberding Estate Admin. Tr. ex rel. Moore v. Vinoy Park Hotel Co.*, 2005 WL 730960, at *3 (N.D. Ill. Mar. 24, 2005); *Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761, 773 (N.D. Ill. 2005). They fail to meet that burden here.

I. Impairment of Collateral (Defendants' Affirmative Defenses Nos. 2 and 3)

Section 3-605(e) of the Uniform Commercial Code provides that:

> If the obligation of a party to pay an instrument is secured by an interest in collateral and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of an indorser or accommodation party having a right of recourse against the obligor is discharged to the extent of the impairment.

810 ILCS 5/3-605(e). The defendants argue they should be excused from their contractual obligations because the hotel property "was equitably impaired by plaintiff's recording of its Assignment of Real Estate Mortgage and Assignment of Assignment of Leases and Rents." *Id.* ¶¶ 15-18. As an initial matter, the defendants do not clearly explain why this constitutes an impairment of collateral. Nevertheless, their argument fails.

Numerous Illinois courts have held that the impairment of collateral defense is unavailable to a guarantor who exercises a guaranty separate from the underlying contract because the guaranty is not a negotiable instrument. *F.D.I.C. v. Rayman*, 1995 WL 505960, at *9 (N.D. Ill. Aug. 23, 1995), *aff'd*, 117 F.3d 994 (7th Cir. 1997); *Florsheim Grp., Inc. v. Cruz*, 2001 WL 1134856, at *2-3 (N.D. Ill. Sept. 25, 2001); *Farmers State Bank of Hoffman v. Schulte*, 608 N.E.2d 694, 697 (Ill. App. Ct. 1993); *Ishak v. Elgin Nat. Bank*, 363 N.E.2d 159, 161 (Ill. App. Ct. 1977); *Fed. Deposit Ins. Corp. v. Hardt*, 646 F. Supp. 209, 211 (C.D. Ill. 1986). As the defendants readily admit, their guaranty contracts are separate from the promissory note. *See* R. 129 ¶¶ 15-18; Ex. 6 ("The separate guaranty contract . . ."); R. 128 Exs. 1-4 (the defendants'

guaranty contracts). Thus, the impairment of collateral defense is not available as a matter of law.

Their argument also fails under the terms of the guaranties. A guarantor's liability is determined by the guaranty contract, which is interpreted under general principles of contract construction. *Cohen v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 618 N.E.2d 1060, 1063 (Ill. App. Ct. 1993). Contract construction and interpretation are appropriate matters for summary judgment. *William Blair & Co., LLC v. FI Liquidation Corp.*, 830 N.E.2d 760, 769 (Ill. App. Ct. 2005). However, summary judgment is inappropriate when a contract's language is ambiguous and must be ascertained through considering extrinsic evidence. *Id.* A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language. *Id.* Even where there are broad statements of guarantor liability, an unambiguous contract must be enforced as written. *Cohen*, 618 N.E.2d at 1063.

The defendants contend they may assert an impairment of collateral defense because their guaranties were not "unconditional." *See* R. 129 ¶¶ 15-18. But this argument contradicts the plain language of their agreements. *See* R. 128 Ex. 1 (Ghanshyam Patel Guaranty) ("[The Guarantor] <u>unconditionally</u> guarantees to Lender, its successors and assigns, the due and punctual payment when due . . . with respect to the Secured Promissory Note.") (emphasis added); R. 128 Exs. 2-4 (Shah Guaranty; Pramod Patel and Sunita Patel Guaranty; Hiralkumar Patel and Priyanka Patel Guaranty) ("[Guarantor] hereby absolutely and <u>unconditionally</u> guaranties to

6

Lender the prompt and unconditional payment of the Debt.") (emphasis added). "Where the language of a contract is unequivocal, it must be carried out according to its language." *McLean Cty. Bank v. Brokaw*, 519 N.E.2d 453, 456 (Ill. 1988). Here, there is no question the defendants' guaranties specify they are unconditional. And the Seventh Circuit has explicitly held that "the defense of impairment of collateral is not available to one who has given an unconditional guaranty of payment." *F.D.I.C. v. Rayman*, 117 F.3d 994, 999 (7th Cir. 1997) (quoting *Istituto Mobiliare Italiano S.p.A. v. Motorola*, 689 F. Supp. 812, 817 (N.D. Ill. 1988)). Further, the guaranties state that "the obligations of Guarantor hereunder shall in no way be terminated, affected or impaired . . . by reason of the release or exchange of any property covered by the Security Instrument or other collateral for the loan." R. 128, Exs. 1-4. Similar language has been held to constitute a waiver of the collateral impairment defense. *See, e.g., Florsheim Grp., Inc. v. Cruz*, 2001 WL 1134856, at *3 (N.D. Ill. Sept. 25, 2001) (holding defendant waived collateral impairment defense because the guaranty clearly stated that the "discharge or pursuit of other security of any kind for any said indebtedness . . . shall in no way affect this Guarantee."); *see also Brzozowski v. N. Tr. Co.*, 618 N.E.2d 405, 410 (Ill. App. Ct. 1993) (finding lender's release of collateral did not discharge the guaranty agreement because guarantor agreed the lender could "release or surrender any security for the Indebtedness . . . without affecting or impairing the liability of [the guarantor] on this guaranty[.]"). In short, the guaranties are replete with language establishing that the defendants' obligations are not affected by the value of the collateral, whether the collateral was impaired,

7

or whether it was later exchanged or assigned. Thus, the defendants' affirmative defense of collateral impairment fails as a matter of law and does not preclude summary judgment.

II. The Defendants' Other Affirmative Defenses

In addition to impairment of collateral, the defendants raised affirmative defenses of fraudulent inducement (Affirmative Defense No. 1), breach of contract (Affirmative Defenses Nos. 4 and 5), and release and discharge of guarantors (Affirmative Defense No. 6). Phoenix REO argued in its motion that these affirmative defenses cannot preclude summary judgment. The defendants ignored these arguments in their opposition, instead focusing only on their impairment of collateral defense. As to the other defenses, they wrote just one sentence: "Defendants do not concede the remaining affirmative defenses but wish to achieve judicial efficiency." R. 128 at 1. A conclusory statement that defendants are not waiving their other affirmative defenses is insufficient to avoid waiver. *See, e.g., Betco Corp., Ltd. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017) (underdeveloped or conclusory arguments in response to motion for summary judgment constitutes waiver); *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 876 (7th Cir. 2008) (undeveloped argument constitutes waiver); *McCready v. Title Servs. of Illinois, Inc.*, 2008 WL 2435933, at *3 (N.D. Ill. June 16, 2008) ("[Plaintiff] waived any argument on his [claim] as he has made absolutely no attempt to contest any of [defendant's] arguments."); *see also Anderson v. Hardman*, 241 F.3d 544, 545-46 (7th Cir. 2001) (affirming dismissal of a pro se litigant's claim when he offered no articulable basis for overturning the district

8

court's judgment and concluding that "we cannot fill the void by crafting arguments and performing the necessary legal research."). To argue on behalf of the defendants in response to Phoenix REO would require this Court to abandon its role as a neutral arbiter. Thus, their unaddressed affirmative defenses are waived.

But even if defendants had argued in support of their other affirmative defenses, they failed to provide any evidence to support their position. The defendants filed two documents in response to Phoenix REO's motion. The first was their response to Phoenix REO's statement of undisputed material facts. In that document, the defendants admit every fact except as they relate to the impairment of collateral discharging their obligations. The second document defendants submitted was their memorandum in opposition to Phoenix REO's motion, which included copies of their guaranties, the assignment of the real estate mortgage, the assignment of assignment of leases and rents, and Ghanshyam Patel's declaration. The Patel declaration concerns only whether Phoenix REO impaired the loan collateral and whether the defendants waived this defense in their guaranties. It provides no basis to support fraud, breach of contract, or why Shashtriji's bankruptcy releases them from their obligations as guarantors. *See* R. 128 Ex. 7. In short, the defendants offered no evidence to support their other affirmative defenses. As such, they cannot survive summary judgment. *See Simpson v. Safeguard Properties, LLC*, 2017 WL 4310674, at *8 (N.D. Ill. Sept. 28, 2017) ("Because [Defendant] pleaded [the defense] as an affirmative defense and it has come forward with no evidence creating a triable issue, the defense must be dismissed at summary judgment.").

**Conclusion**

For the reasons stated above, the Court grants Phoenix REO's motion for summary judgment on Count II. Phoenix REO submitted four affidavits, loan payment history records, and attorney invoices collectively totaling $1,228,523.84. The defendants do not dispute these costs. R. 129 ¶¶ 20, 23. The Court therefore will enter judgment against the individual defendants in the amount of $1,228,523.84 plus any additional interest and late fees that have accrued since Phoenix REO filed its motion on February 28, 2019. Phoenix REO should submit a proposed order with the full amount of the judgment and an affidavit supporting the updated amount.

ENTERED:

*Thomas M Durkin*
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: July 29, 2019